## Commonwealth v. Eller

*James R. DiFrancesco*, for Commonwealth.
*Russell Eller, Jr., p.p.*, for defendant.

SHAULIS, *J.*, October 14, 1977—This matter is before the court on the appeal of Russell Eller, Jr., from revocation of his hunting license by the Pennsylvania Game Commission pursuant to provisions of The Game Law of June 3, 1937, P.L. 1225, as amended, 34 P.S. §1311.315.

On November 30, 1976, appellant was charged with transporting an untagged deer, 34 P.S. §1311.708, and possession of a loaded firearm in a moving vehicle, 34 P.S. §1311.806. He voluntarily signed field acknowledgments of these two violations and paid the $25 fine for each to the arresting game warden. Subsequently, the Game Commission notified appellant of a one-year revocation of his hunting and trapping privileges as a result of these violations. Timely appeal followed.

The Game Law does grant the commission the right to revoke a license without hearing when the licensee has signed an acknowledgment of a violation. 34 P.S. §1311.315(1) reads:

"The commission may revoke any hunter's license and deny any person the right to secure a license or to hunt or trap anywhere in this Commonwealth, with or without a license, if said

licensee or person has either been convicted or signed an acknowledgment of violating any provision of this act, or if such person has been adjudged guilty, in the manner hereinafter provided, of any of the acts enumerated below, for such periods as hereinafter specified."

However, §1311.315(6) allows the licensee to appeal the commission's decision to the Court of Common Pleas for a de novo hearing. See, e.g.: Com. v. Feldbauer, 21 Somerset 120 (1960); Com. v. Bixler, 5 D. & C. 2d 369 (Lebanon Co. 1955).

We believe the role of the common pleas court on appeal of such a license revocation was properly stated in Ligi Appeal, 65 Lackawanna 86, 88 (1963), where the court held: "[T]he revocation under such circumstances is not mandatory and that it is the duty of the Court on appeal to consider all of the circumstances surrounding the incident which precipitated the suspension and to determine whether or not the said suspension is justified under all of the circumstances."

In a similar case involving revocation by the commission, Judge McDonald of Cambria County stated:

" . . . [The appellant] may offer testimony of mitigating circumstances. There is no doubt a voluntary payment of fine and costs is evidence of the violation. However, it is not conclusive and does not foreclose an inquiry into defenses and the guilt of the violation underlying the revocation. If it did, it would be fruitless for anyone to appeal from a revocation after having been adjudged guilty upon trial before a magistrate, or, as here, having voluntarily made payment of fine and costs when charged with an offense under the game laws. In such case, this court would be powerless to review the discretion of

the commission. We conclude, under the mandate of the legislature, that the hearing shall be de novo, this court may make a judicial review of the ex parte administrative decision of the commission, and change the penalty to fit the violation, if any." Bruce Appeal, 41 D. & C. 2d 195, 196-97 (Cambria County 1966). See also: Weidman Appeal, 44 D. & C. 2d 688 (Lebanon Co. 1968); Com. v. Robinson, 8 Adams 173 (1967); Com. v. Smith, 80 York 142 (1966); Pa. Game Comm. v. Long, 14 Cumberland 94 (1962), aff'd 413 Pa. 303, 197 A. 2d 39 (1964).

The testimony revealed that the game warden stopped appellant's pickup truck and found appellant had a rifle with a loaded clip still in the rifle, but no round in the chamber. Appellant then told the warden there was an untagged deer in the truck. Appellant said he found the deer, shot by somebody else, and had picked it up because he "didn't want to see it go to waste." The arresting warden advised appellant of the violations involved and obtained his signature on the field acknowledgments.

Appellant did not deny the events testified to by the warden, but offered testimony to explain his actions. A review of appellant's testimony shows that appellant and his son had been at a hunting camp and knew that the son of one of appellant's friends had hit a buck the previous day but the buck got away and could not be found. Appellant joined in the search for the buck, and he and his son soon found the wounded animal. Appellant said the buck was unable to get up, so he shot it. He started to gut it, noticed that it was partially spoiled, and decided to take it back to the boy who had shot it. Appellant then took the buck to his truck. He did not tag it

because he knew it was "somebody else's deer" even though he had "finished it off."

Appellant stated that, after putting the buck in the truck, the rifles were placed in the truck. He did not insure that the clip was completely removed from his rifle; the clip was sticking in the rifle, but not inserted the whole way so as to be functional. Appellant admitted he should have taken the clip completely out and put it in his "pocket or anything," but simply neglected to do so. He also admitted, "I should have left it (the deer) and went and got the boy and then came back and got it instead of taking it on my own to take it in. That's where I made my mistake."

While the game warden corroborated appellant's testimony that the deer had been severely shot through the stomach and entrails, he contradicted appellant's contention that the buck had been shot a day earlier by saying the blood and wound seemed fresh to him. After paying the fines appellant took the deer to the game warden in Somerset County who examined the deer and declared it to be unfit for human consumption and issued appellant a new permit to kill another deer. An examination by the arresting officer would have revealed the same circumstances and the officer could easily have determined that the deer was shot the day before by the very odor which caused appellant to refrain from removing the entrails. We are impressed by appellant's truthfulness. With the benefit of hindsight, it is easy to suggest that appellant should have left the deer alone and gone after the others in his party or a game warden, but we cannot fault him for acting in a manner which we suspect most hunters would agree to have been reasonable and humane at the time. Although appellant may have

been guilty of bad judgment, we do not think his actions demonstrate an intent to ignore or circumvent the provisions of the Game Law for which he has paid the fines.

This appellant has hunted for 44 years without any type of game violation and under these circumstances, we believe appellant's payment of the fines has been a sufficient penalty and that the Game Commission erred in revoking appellant's license.

## ORDER

Now, October 14, 1977, the action of the Pennsylvania Game Commission revoking the hunting and trapping privileges of appellant, Russell Eller, Jr., is reversed. Appellant's hunting and trapping privileges are hereby reinstated.

Costs on appellant.